IN THE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


JERRY FUNDERBERG,                    )

    PETITIONER/DEFENDANT,    )

v.                                   )                    CASE No._____

PAUL M. VERDINI,                     )                    ( In Re: Case No. CR-90769-71)

    RESPONDENT(S).          )


PETITION FOR A WRIT OF HABEAS CORPUS AND

MEMORANDUM IN SUPPORT OF WRIT OF HABEAS

CORPUS PURSUANT TO 28 U.S.C.§ 2241 ET SEQ.


      This Memorandum of points and authorities in support of
the accompanying petition for writ of habeas corpus pursuant to
28 U.S.C.§2241 et seq., is submitted by the petitioner, **Jerry
Funderberg,(hereinafter referred to as "Petitioner")**, acting
pro-se, and reflects his sincere belief that a writ of habeas
corpus should be issued in that he is being continuously deprived
of his rightly liberty by virtue of a violation of his constitut-
ional right to **due process**, and effective assistance of counsel
under the Fifth and Sixth Amendments to the United States Con-
stitution.

      As such, the petitioner states that this action does have
merit.

having exhausted all other available means or remedy in this re-
gard, Petitioner is left with no other alternative than to seek
collateral relief from the violations described herein, which he
in good faith believes represent a level of constitutional infirm-
ity that authorizes this Court to accept this action for review.

### Authorization For Submission Of

### Section 2241 Action/Generally

A collateral action pursuant to 28 **U.S.C. § 2241, ( also
known as petition for writ of habeas corpus),**is essentially a
civil lawsuit filed by a prisoner to challenge the legality of
his custody in situations where a motion pursuant to 28 U.S.C.§
2254 would be ineffective and/or inadequate to test the legality
of Petitioner's detention.

A habeas petition, by definition seeks a form of relief,
(other than money damages), such as immediate or accelerated rel-
ease from confinement, or a change in improper prison conditions.
As such, federal habeas corpus relief under Section 2241 is avail-
able to anyone held **"in custody in violation of the constitution,
laws or treaties of the United States."** Id. 28 U.S.C.§2241(c)(3).

### a). **Exhaustive Requirement:**

This action is predicated upon a direct attack by the
petitioner on the legality of his current judgment and sentence.
In order to proceed Petitioner must demonstrate the ineffective-
ness or inadequacy of submitting an action pursuant to Section
2254. Thus, Petitioner states that he has fully exhausted any

**(2)**

and all available remedies prior to the submission of this action.
**(See Exhibits "A"and"B" herewith this Petition).**

### b). Custody and Venue:

The petitioner states that he is a prisoner currently
incarcerated at the Massachusetts Correctional Institution –
Shirley Medimum located at P.O. Box 1218, Shirley, Massachusetts
01464, where he is serving a sentence of confinement for violation
of Massachusetts State laws.

The petitioner further states that Massachusetts Corr-
ectional Institution(MCI)– Shirley Medimum, in Shirley Mass., is
located within the jurisdictional parameters of the United States
District Court for the District of Massachusetts, this, venue is
properly before this Court.

### c). Jurisdiction Authority:

This action arises pursuant to the provisions to Title
28 U.S.C. § 2241 et seq., as well as Title 18, United States Code,
Section 3231. Petitioner states that due to the unfair placed on
petitioner that has in fact **"Denied Petitioner access to the Court"**,
petitioner seeks dismissal of the indictment or other alternative,
Petitioner asserts this case need to be dismissed due to other
prejudices, which violate his constitutional rights.

Section 2241 states in part that **"Writ of Habeas Corpus
may be granted by the District Court Judge within their respective
jurisdictions"** to prisoners in custody in violation of the Con-
stitutional or laws or treaties of the United States. **28 U.S.C.
§ 2241(a)(c)(3).** Federal District Courts have the authority to

(3)

legal of his current custody.

## Previous Proceedings:

On or about May 16, 1975, petitioner was indicted in the Suffork Superior Court for First -Degree Murder, Arm Robbery, and for Unlawfully Carrying a Revolver. **(See attached Docket Sheet EXHIBIT"C" herewith this petition)**.

After a trial by a jury, petitioner was convicted of said charges and sentenced to two Nature Life terms without parole for the murder and arm robbery counts, and to a 2½ to 5 years state prison term for his conviction for unlawful possession of a handgun, to run concurrent with petitioner's nature life sentence.

This petitioner's conviction and sentence was upheld by the (Appellate Division) in April of 1978, **see Commonwealth of Massachusetts v. Funderberg**, 373 N. E.2d 963(1978). Petitioner filed a motion to vacate his convictions pursuant to **28 U.S.C. Section 2254** in the District of Massachusetts. The Federal District Court issued a denial of the **§2254** motion and refused to grant a certificate of appealability pursuant to **28 U.S.C.§ 2253. (See attached Exhibit "B" herewith this petition).** In so holding the Court made no specific findings of facts or conclusions of law. Now this Writ of Habeas Corpus pursuant to **28 U.S.C.§ 2241** now follows.

## STANDARD OF REVIEW

The standard of review in this case is de novo, because " A Writ of Habeas Corpus is available to any person held" <u>in custody in violation of the constitution or laws . . . of the United States</u>. 28 U.S.C. § 2241(c)(3).

dispose of habeas corpus matters as **"law and justice requires".**
**28 U.S.C. § 2243.** The District Court has the power to grant <u>any</u>
form of relief necessary, including permanent discharge. **See:**
**Hilton v. Braunskill,** 481 U.S. 770, 775(1987). Federal Courts
are not free to turn down Federal jurisdiction once the statutory
nexus has benn established. **See: United States v. Turkette,** 452
U.S. 576, 587,69 L.Ed.2d 246, 101 S.Ct. 2524 (1984); **Cohen v.**
**Virginia,** 19 U.S. 264, 5 L. ed.2d 257 (1821).

In <u>U.S. v. Hayman,</u> 342 U.S. 205, 206, 96 L.ed. 232, 72
S.Ct. 263 (1952) decided shortly after the enactment of Section
2254, 2255, the Supreme Court considered the continued availaity
of the Writ of Habeas Corpus stating that **"** **in a case where Sect-**
**ions 2254, 2255 is shown inadequate or ineffective, the law pro-**
**vides that the Habeas remedy shall remain open to afford a defend-**
**ant relief. "** Petitioner asserts that the filing a §2254 would
in fact be inadequate and ineffective due to the Court and the
Appellate Court assertion that petitioner has failed to file his
§2254 petition before April 24, 1997--as required by the Anti-
terrorism and Effective Death Penalty Act of 1996, Pub. Law No.
104-132,110 Stat. 1214 ("AEDPA"). **See: Attached Exhibit "A" and**
**"B",** which in turn, denies petitioner access to the courts.

### Request for Evidentiary Hearing:

The petitioner requests that, should this Court be
unable to make a clear determination as to the substantive merits
of his claims for relief from the record of the case and/or the
attendant pleadings he be afforded an evidentiary hearing in
which to resolve any and all controverted issues concerning the

## STATEMENT OF FACTS

However, this means of testing the stability of the
circumstances as related to the **"new information"** discovered
and analyzed was and is inadequate due to the limited---pro-
visions of a § 2254 petition. Petitioner was convicted in state
court of one count of first degree murder, and arm robbery and
sentenced to nature life. After having exhausted state court ,
as well as appellate division appeals and post-conviction remedies,
petitioner is now seeking another federal habeas corpus relief
pursuant to 28 U.S.C. § 2241 (c)(3) for actual innocence, petitioner
did not receive effective assistance of counsel during the guilt
phase of his trial in violation of his rights under the Sixth
Amendment, The Massachusetts nature life sentence as applied to
petitioner, is unconstitutional in that it permitted a judge
rather than a jury to determine the elements necessary for a
capital sentence, petitioner did not receive effective assistance
of counsel during the sentencing phase of his capital trial in
violation of his rights under the Sixth Amendment, and that
the state trial court's jury instruction of law of principals
relieved state of it's Fourteenth Amendment burden of proving
petitioner's intent to kill, and that the erroneous instruction
had substantial and injurious effect or influence in determining
jury's verdict.

In order for this Honorable Court to resolve this matter,
it must first consider the thershold **Teague** question, namely whether
**Ring v. Arizona**, 536 U.S. 584 (2002), announced a substantive
rule or a procedureal rule. See **Bousley**, 523 U.S. at 620, 118
S.Ct. 1604.

DISCUSSION

      The petitioner contends that if the State of Massachusetts alleges that **Teague v. Lane**, 489 U.S. 288 (1989), bars relief to petitioner on his issues, this Honorable Court must decide whether **Ring** has retroactive application to cases on federal habeas review. **Horn v. Banks, 536 U.S. 266, 272 (2002) (holding that the court of appeals erred by not performing a Teague analysis when the issue was "properly raised by the state") (citing Caspari v. Bohlen, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) ("[I]f the State does argue that the defendant seeks the benefit of a new rule of constitutional law, the court MUST apply Teague before considering the merits of the claim.")(emphasis in original)).**

      It is petitioner's sole contention that, predicated upon not only a compilation of actions by state officials, and ineffective assistance of counsel, petitioner did not commit First Degree with intent to Kill, in count one of the indictment.

      The petitioner now return to the question of whether a newly announced constitutional rule will apply retroactively to collateral review .

      As Justice Holmes had observed at the turn of the century, **"[j]udicial decisions have had retrospective operation for near a thousand years."** Kuhn v. Fairmont Coal Co., 215 U.S. 349, 372 (1910) (Holmes, J., dissenting). At common law, the retroactivity question never arose because judges were believed to be discovering rules rather than declaring them. John C. Gray, **The Nature and Sources of the Law 222 (1st ed. 1909).** Even now, a presumption exists that **"a court is to apply the law in effect**

(7)

at the time it renders its decsion, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. Sch. Bd. of Richmond. 416 U.S. 696, 711 (1974). As the Supreme Court noted, " ' [B]oth the common law and our own decisions' have recognized a general rule of retrospective effect for the constitutional decisions of this Court.'" Harper v. Va. Dep't of taxation, 509 U.S. 86, 94 (1993) (quoting Robinson v. Neil, 409 U.S. 505, 507 (1973)).

Following the Civil War and enactment of the Fourteenth Amendment, Congress expanded the scope of habeas corpus review to cover challenges brought by those in state custody, see Act of 1867, ch. 28, § 1, 14 Stat. 385 (codified as amended at 28 U.S.C. § 2241 (c)(3)), prompting the Supreme Court to determine the proper scope of federal habeas jurisdiction. by 1953, the Supreme Court confirmed the cognizability of all federal constitutional claims filed by state prisoners. Brown v. Allen, 344 U.S. 443 (1953). The expanding scope of federal review, coupled with a significant increase in the filing of federal habeas petitions by state prisiners, proved the Supreme Court with the opportunity to review for the first time a number of alleged constitutional deprivations. Walter V. Schaefer, Federalism and States Criminal Procedure, 70 Harv. L. Rev. 1, 21-22 (1956). Epochal constitutional criminal procedure protections were announced, and their wake, a novel discussion arose as to whether a new constitutional rule of criminal procedure should be applied retroactively on direct or collateral review. This debate, a "product of the Court's disquietude with

the impacts of its fast-moving pace of constitutional innovation
in the criminal field," **Mackey v. United States, 401 U.S. 667,
676 (1971) (Harlan, J., concurring in part and dissenting in
part), culminated in Linkletter v. Walker, 381 U.S. 618 (1965).**

In **Linkletter**, a defendant was convicted based on evidence
that was obtained during a warrantless search. A year after the
defendant had exhausted his state appeals, the Supreme court decided
**Mapp v. Ohio** , 367 U.S. 643 (1961). Subsequently, the defendant
filed a habeas petition arguing that **Mapp** required reversal of his
conviction. The Supreme court held that even though **"the Constitution
neither prohits nor requires retrospective effect," Linkletter**, 381
U.S. at 629, 85 S. Ct. 1731, a constitutional rule of criminal
procedure would not be retroactive unless, under a case-by-case
analysis, three factors--the purpose of the new rule, reliance on
prior doctrine, and the effect of retroactivity on the administration
of justice--favor retroactive application of the rule. **Id.** at 636,
S. Ct. 1731. The **Linkletter** rule applied to convictions pending
on direct review as well as to final convictions challenged
collaterally by a federal habeas petition. **Johnson v. New Jersey,
384 U.S. 719, 732 (1966).**

The petitioner asserts that he is only using **Ring v. Arizona,**
only for the retroactivity to captial sentencing scheme that was
incompatible with the Sixth Amendment right to a trial by jury that
"separate offense" of capital murder.

## BACKGROUND

On or about December 10, 1974, about 4:00 p.m., Peter

Sulfaro, was fatally shot and killed in an arm robbery in Roxbury, Massachusetts. The victims fifteen (15) years old son was attending the cash register in his father's shoe repair shop in Roxbury, when three men entered the shop, allegedly the petitioner (Jerry Funderburg), and two(2) co-defendants Raymond and Robert Anderson. One of the men, identified by Paul Sulfaro as defendant Gaines, gave him a description of a shoe left at the shop and asked Paul Sulfaro to find the shoe, he was asked to change a dollar bill to make a phone call to try to locate the ticket for the shoe. When Paul Sulfaro (hereinafter referred to as "Mr. Sulfaro"), opened the cash register, Gaines allegedly took money from the cash register. Mr. Sulfaro tried to close the cash register and as the three men backed out of the shoe's door, one of the men shot and fatally wounded his father Peter Sulfaro as the victim was coming out from behind the shelves. The three men after the shots were fired ran toward a nearby housing project to a apartment that was used as a "shooting gallery". The three men arrived at 8 Bean Court in Roxbury, out of breath, sometime after 4:00 p.m. the same day. **(See Appendix Funderburg, 374 Mass. Id. at 578-79).** Allegedly petitioner Funderburg had a gun in his belt. The petitioner was accused of murdering Mr. Sulfaro on the evening of December 10, 1974. There were one eyewitness , and the evidence relating to the petitioner's guilt was sole circumstantial. The petitioner did not testify.

During the closing argument on behalf of the Commonwealth,

and the charge to the jury the Commonwealth did not instruct
the jury as to each of the essential elements to a first degree,
pursuant to Mass. G.L. 265§1; Armed Robbery, pursuant to Mass.
G.L.c. 265, §17; and Unlawfully Carrying A Revolver on his person,
pursuant to G¶L¶ c. 269§10.

Petitioner Jerry Funderberg, is currently serving a Natural
Life sentence in the Massachusetts  State Penitentiary. On or
about June 18, 1976 , after a jury trial the Honorable Judge
Roy presiding, petitioner was convicted as to all counts of the
indictment for first degree murder for his role in the murder
of Mr. Sulfaro[1] The jury in the case received erroneous instruction
on law of principals,as well as reasonable doubt. On direct appeal
petitioner challenged his conviction on account of several evidentiary
errors at trial and the insufficiency of the evidence against
him, and petitioner's conviction was affirmed by the Massachusetts
Court of Appeals. See: **Commonwealth v. Funderberg**, 374 Mass.
**577, 373 N.E.2d 963 (1978).**

Petitioner did seek direct review of his conviction by
the Massachusetts Supreme Court, which affirmed his convictions
on March 6, 1978. Petitioner filed his first motion for new trial

---

1. Funderberg was indicted, along with his alleged co-defendants  Raymond Gaines and Robert
Anderson, for the first degree murder of Mr. Sulfaro. The three defendants were tried together
and each convicted as principals to count one of the indictment of the first degree murder.

in 1977, which the trial court denied on or about April 4, 1977.
Petitioner filed a second motion for new trial in 1990, which
the trial court denied on or about November, 1992. On or about
May 30, 1997, petitioner filed a third motion for new trial,
which the trial court denied on or about July 15, 1997.(See: Exhibit"A"
petitioner's motions for a new trial attached hereto this petition).

Petitioner then sought an filed for an writ of habeas
corpus pursuant to 28 U.S.C.§2254, on or about February 11, 2000,
which was denied by the Federal Court as **"time barred"**. In his
writ of habeas corpus petitioner raised three claims, including
ineffective assistance of counsel, erroneous jury instructions,
as well as prosecutional misconduct.

Petitioner now present this writ of habeas corpus pursuant
to 28 U.S.C.§ 2241,  for the constitutional violations that relieved
the prosecution of the burden of proving, beyond a reasonable
doubt, petitioner's specific intent to kill Mr. Sulfaro, which
violated the Fourteenth Amendment's due process, ineffective
assistance of counsels, as well as, prosecutional misconduct
by the Commonwealth. Petitioner must relie on the reasonong in
**Sandstrom v. Montana**, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d
**39 (1979)(in a case in which intent is an element of the crime**
**charged, the jury instruction, "the law presumes that a person**
**intends the ordinary consequences of his voluntary acts"), and**
**Strickland v. Washington**, 466 U.S. 668 (1984)  for "Standard
of Review", as well as **Apprendi v. New Jersey**, 530 U.S. 466 (2000)
**and Ring v. Arizona**, 536 U.S. 584 (2002).

(12)

I.

**ARGUMENT**

**THAT PETITIONER(JERRY FUNDERBERG) IS ACTUALLY
INNOCENT OF THE CHARGE OF FIRST DEGREE MURDER
THE STATE OF MASSACHUSETTS INTRODUCED INSUFFICIENT
EVIDENCE TO PROVE THAT THE PETITIONER COMMITTED
FIRST DEGREE MURDER.**

It is petitioner sole contention that, predicated upon not
only a compilation of actions by state officials, and ineffective
assistance of counsels, petitioner did not commit First Degree
murder, as alleged in count one of the indictment. The petitioner
contends that he has been deprived of his constitutional right to
due process . Petitioner further contends that while the record
of this case,**(from a surface perspective),** would tend to appear
as though his attorneys did everything reasonably possible to
defend and/or represent his interests, in actuality, such an
appearance falls well short of the true facts of this case which
reveals that petitioner is actually innocent of the crimes charged,
as well as petitioner receiving ineffective assistance of counsel,
which deprived petitioner of a full and fair trial and sentencing
determination, all in violation of the petitioner's 5th, 6th and
Fourteenth Amendments Rights under the United States Constitution.

**A). Petitioner's Actual Innocence Claim As To The Charges By The
Commonwealth.**

At the end of the State's evidence and the conclusion of
all of the evidence, David Bass filed two(2) separate affidavits
in which he recants his testimony. The Court also recived an affi-
davit from Marlo Dawn Digable formally Robert Anderson a co-defendant
in the case, in which Digable admits his participation in the robbery

(13)

and shooting and stated within the affidavit that the two part-
icipants at the time of the event were Antonio Daniels and  Alfred
Hamilton. Mr. Digable, also stated that the petitioner (Funderberg)
had nothing to do with the robbery and shooting.

The petitioner's attorney Margaret A. Burnham motion for
a new trial  and requested a second trial based on these affidavits
on the grounds of newly discovered evidence, and the Honorable
Justice Elbert Tuttle of the Superior Court, for Suffolk County
denied said motion. (See attached **Memorandum of Decision of
petitioner's Motion For A New Trial EXHIBIT "A")**.

As the petitioner did go to trial, the petitioner desposes
that he would have testified but for the faulty advice of his
attorney of record (Mr. Maples), the petitioner did not testify,
and with the State Attorneys' misconduct, as well as, judicial
misconduct and ineffective assistance of counsel the petitioner
could not prove that he was actually innocent of the crimes he
was convicted of.

The petitioner will not challenge the basic premises
of the Commonwealth's case. But the petitioner does now attack
those aspects of the case that dealth with his conviction and
sentence.

The petitioner contends that due to all of these post-
trial developments should raise this Honorable Court's view the
distinct possiblity that given the opportunity, Funderberg may
be able to muster a plausible factual case meeting the exacting

(14)

gateway standard established by the Supreme Court in **Schlup v. Delo**, 513 U.S. 298 (1995), for overriding a petitioner's clear failure to meet deadlines and requirements for filing a timely petition in federal court. Under **Schlup**, a petitioner's **"otherwise-barred claims [may be] considered on the merits... if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases...implicating a fundamental miscarriage of justice.'"** (quoting Schlup, 513 U.S. at 315, 115 S.Ct. 851).[2]

Petitioner asserts that in order to pass through **Schlup's** gateway, and have an otherwise barred constitutional claim heard on the merits, he must show that, in light of all the evidence, including evidence not introduced at trial, "it is more likely than not that no reasonable juror would have found petitioner guilty beyound a reasonable doubt." **Schlup**, 513 U.S. at 327, 115 S.Ct. 851. The petitioner need not show that he is **"actually innocent"** of the crimes he was convicted of committing; instead, he must show that " **'a court cannot have confidence in the outcome of the trial.'"** (quoting Schlup, 513 U.S. at 316, 115 S.Ct. 851).

As here, if a factfinder should conclude that the two affidavits by Mr. Bass and Mr Anderson are credible, and that in

---

2. A claim that one should pass through the Schlup gateway is "'not itself a constitutional claim, but instead a gateway through which a habeas corpus petitioner must pass to have his otherwise barred constitutional claim considered on the merits,'" Schlup, 513 U.S. at 315, 115 S.Ct. 851 (quoting Herrera v. Collins, 506 U.S. 390,404 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

light of Mr. Anderson's testimony and other evidence Petitioner
(Funderberg) was neither the shooter and/or robber, then the
**Schlup** gateway would seem to open. As Justice Stevens said in
**Schlup**, "[t]o be credible,[aclaim of actual innocence] requires
petitioner to support his allegations of constitutional error
with new reliable evidence ... that was not presented at trial."
513 U.S. at 324. 115 S.Ct. 851 (emphasis added).

The petitioner further contends that when the existence
of an aggravating circumstance removes the possibility of parole
from the sentence authorized for an offense, that circumstances
increases the maximum penalty for the offense for purposes of the
rule from **Apprendi v. New Jersey**, 530 U.S. 466 (2000), and **Ring
v. Arizona**, 536 U.S. 584 (2002), which requires a fact that in-
creases the statutory offense maximum to be found by a jury beyound
a reasonable doubt.

The petitioner was convicted of aggravated first-degree
murder and sentenced to a natural life sentenced. Due to the
Supreme Court's decisions in **Apprendi, and, Ring,** the Supreme
Court held that, besides the fact of prior convictions, any
fact that increases the penalty for a crime beyound the statutory
maximum must be submitted to a jury and proved beyound a reasonable
doubt. The Court extended Apprendi to capital cases in Ring, which
held that the Sixth Amendment requires a jury to make the de-
termination to the existence of any aggravating circumstances
that makes a defendant eligible for a death sentence. The Ring,
court however, expressly left open the question whether having

(16)

a judge rather than a jury find the existence of an aggravating
factor always requires reversal or, instead, is subject harmless-
error analysis. The petitioner was convicted of first degree
murder which is a natural life with no parole. A sentence of
natural life is more severe than a sentence of life with the
possibility of parole.

The Ring decision did announce a procedural rule than
a substantive one. The Courts has held that Ring contains a new
substantive rule despite the teaching in **Apprindi v. New Jersey**,
530 U.S. 466 (2000), upon which the Supreme Court expressly relied
in deciding Ring. See Ring v. Arizona , 536 U.S. at 602, 122 S.Ct.
2428.

In Apprendi, the defendant plead guilty to two counts
of second-degree possission of a firearm and one count of unlawful
possession of a bomb. **530 U.S. at 469-70, 120 S.Ct. 2348.** After
accepting Apprendi's guilty plea, the trial court conducted a
hearing and concluded that Apprendi's firing of several bullets
into the home of an African American family was "motivated by
racial bias." **Id. at 470-71, 120 S.Ct. 2348.** This conclusion
resulted in a "hate crime enhancement," doubling the maximum
potential sentence. **Id.** Apprendi was sentenced to a twelve-year
term of imprisonment, two years more than the ten-year maximum
for the firearms offense. **Id. at 474, 120 S. Ct. 2348.**

The Supreme Court recognized that the constitutional
guarantees embedded in the Sixth Amendment and the Fourteenth
Amendment were at stake. **Id. at 476-77, 120 S.Ct. 2348.** In keeping

**(17)**

with those guarantees, the Court rendered the ruling that resonated
throughout the country: **"Other than the fact of a prior conviction,
any fact that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond
a reasonable doubt."** Id. at 490, 120 S. Ct. 2348.

In **Ring v. Arizona,** quoting extensively from Apprendi, the
Supreme Court addressed the Sixth Amendment right to a jury trial
in the context of capital sentencing. **536 U.S. at 602-03, 122 S.Ct.
2428.**

The Supreme Court described its holding in **Apprendi** as a
determination **"that Apprendi's sentence violated his right to a jury
determination that he is guilty of every element of the crime with
which he is charged beyond a reasonable doubt."** That right attached
not only to **Apprendi's** weapons offense but also to the hate crime
aggravating circumstance." **Id. at 602, 122 S. ct. 2428 (citation
internal quotation marks and alteration omitted).**

Given **Ring's** declaration that a defendant is entitled
under the Sixth Amendment to a jury verdict in the penalty phase
of a capital case, the substitution of a non-jury verdict cannot
be subject to harmless-error analysis, and this Honorable Court
should review the petitioner's writ of habeas corpus in the
interest of justice.

### SUMMARY

For the reasons stated above, The petitioner (Jerry
Funderberg), contends that his natural life sentence should have
been just a Life sentence with the possiblity for parole under

(18)

the Supreme Court's decisions in **Apprendi** and **Ring**. **Ring** is a
ruling which may be apply retroactively to cases on collateral
review, and the petitioner (Funderberg) should be given the
benefit of the **Ring** and **Apprendi** ruling. Given the holding of
**Ring and Apprendi**, the court has no jurisdiction to sentence
the petitioner (Funderberg) to a Natural Life imprisonment. His
sentence was therefore in violation of the petitioner's constitutional
rights to due process and equal protection under the Fifth and
Fourteenth Amendments to the United States Constitution.

### FUNDERBERG CONVICTION AND SENTENCE SHOULD BE
### OVERTURNED DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner was represented by counsels of record
at the trial and sentencing of this matter in Suffork Superior
Court. he had a right to counsel under the Sixth Amendment to the
United States Constitution: "In all criminal prosecutions, the
accused shall enjoy the Assistance of Counsel for his defense[sic].
The United States Supreme Court requires not just that a defendant
receive the assistance of counsel but that he receive **effective**
assistance. **"An accused is entitled to be assisted by an attorney,
whether retained or appointed , who plays the role necessary to
ensure that the trial is fair. For that reason, the Court has
recognized that 'the right to counsel is the right to the effective
assistance of counsel.'''** **Strickland v. Washington, 466 U.S. 668,
685-86(1984) (citation omitted).** There was no reason why trial
counsel as well as appellate counsel could not have anticipated

the errors in the petitioner's case and lodged the appropriated

objections. The failure to do so should not be laid at the Funderberg's

door.

The petitioner also argues that the State attorney's has

represented misconduct in this case as well because they new of

the withheld testimony of one of the defendant's in this case(Mr.

Anderson).

### CONCLUSION

For the above-stated reasons, the petitioner contends

that his judgment, conviction, and sentences should be vacated.

The petitioner contends that the conviction and sentence was imposed

in violation of the Constitution and laws of the United States,that

the Court was without jurisdiction to impose the sentence imposed

Funderberg, that the sentence was in violation of the reasoning

in **Ring supra,** and that the judgment and conviction is otherwise

subject to collateral attacked. Accordingly, Funderberg moves the

Court to grant him a evidentiary hearing, as well as vacate the

conviction of Natural Life. Alternatively, funderberg contends he

should be granted a new trial.

This the ___6___ day of ___June___ , 2004.

Respectfully submitted,

*Jerry Funderberg*

JERRY FUNDERBERG

W-35608

MCI-SHIRLEY

P.O. BOX 1218

SHIRLEY, MASSACHUSETTS  01464

(20)

## CERTIFICATE OF SERVICE

I, Jerry Funderberg, hereby certify that I have served a true and correct copy of the foregoing "Writ of Habeas Corpus" Memorandum of Law In Support, Application to Proceed In Forma Pauperis, and attachments, by first class mail, on this __6__ day of __June_____, 2004 to the following addresses and parties concerned:


ATTRONEY GENERAL
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS    02108

and to

PAUL M. DERDINI, SUPERINDENTEND
MCI- SHIRLEY MEDIUM COMPLEX
P.O. BOX 1218
SHIRLEY, MASSACHUSETTS    01464




_Jerry Funderberg_
JERRY FUNDERBERG W-35608

Exhibits "A—O"

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                          SUPREME JUDICIAL COURT
                                      FOR SUFFOLK COUNTY
                                      NO. SJ-97-0564


COMMONWEALTH

vs.

JERRY FUNDERBERG


MEMORANDUM

The defendant has applied under the gatekeeper provision of
G. L. c. 278, § 33E (1994 ed.), for leave to appeal from the
denial of the Superior Court of his third motion for a new trial.

The defendant was convicted on June 18, 1976, of murder in
the first degree, armed robbery, and unlawful possession of a
handgun.  His first motion for a new trial was denied in 1977.
His convictions were affirmed by the Supreme Judicial Court in
Commonwealth v. Funderberg, 374 Mass. 577 (1978).  The
defendant's second motion for a new trial on the grounds of newly
discovered evidence was denied by a judge of the Superior Court
in 1992.  The motion for a new trial before me, the defendant's
third, was denied by a judge of the Superior Court on July 15,
1997.

Under G. L. c. 278, § 33E, the defendant must present "a new
and substantial question which ought to be determined by the full

A - 114

court," in order for his application to be granted.  Commonwealth
v. Ambers, 397 Mass. 705, 707 (1986).  The defendant identifies
three issues that he asserts meet the statutory standard.  Two of
the claims, that a directed verdict of not guilty of murder in
the first degree should have been entered and that the
prosecutor's closing argument deprived him of a fair trial, are
not new because they could have been raised, but were not, at
earlier stages in the defendant's post-conviction proceedings.
"An issue is not 'new' within the meaning of G. L. c. 278, § 33E,
where either it has already been addressed, or where it could
have been addressed had the defendant properly raised it at trial
or on direct review."  Id. at 707; Fuller v. Commonwealth, 419
Mass. 1002, 1003 (1994).  With respect to these two issues, the
defendant's application is denied.

     The defendant's last claim is that the instruction given the
jury on reasonable doubt lowered the burden of proof for the
Commonwealth.  The defendant did not object to the charge at
trial, or raise this issue either on direct appeal or in his 1992
motion for a new trial.  I examine this issue to determine
whether it could have been raised earlier by the defendant.
Commonwealth v. Ambers, supra at 707.

     A trial judge must define the standard of proof for a jury
in terms which sufficiently explain the prosecution's burden and
which insure that the jury understands that the burden rests with
the prosecution.  See Commonwealth v. Wood, 380 Mass. 545, 549

                                2

n.4 (1980) (jury charge must be correct on both burden and quantum of proof). In a portion of the jury charge cited by the defendant as erroneous, \[1]/the judge stated:

> "Proof beyond a reasonable doubt does not mean proof beyond all doubt. It does not mean proof beyond the possibility of innocence. It is rarely if ever possible to find a case so clear that there cannot be the possibility of innocence. <u>If a reasonable doubt or a mere possibility of innocence were sufficient to prevent a conviction, few if any defendants could ever be found guilty of any crime.</u>"

The highlighted portion of this excerpt misstated the law and the burden of proof the Commonwealth had to meet to obtain a conviction. See <u>Commonwealth</u> v. <u>Spann</u>, 383 Mass. 142, 150 (1981) (emphasis added) ("if an <u>unreasonable</u> doubt or a mere possibility of innocence should be deemed enough to prevent conviction, then practically everyone charged with a crime would go free" is accurate statement of law).

Where the legal or constitutional grounds were available to the defendant at trial or at the time of the appeal, the issue is not "new" even if the claim was not raised earlier. <u>Commonwealth</u> v. <u>Ambers</u>, <u>supra</u> at 708, citing <u>Commonwealth</u> v. <u>Pisa</u>, 384 Mass.

---

\[1] The defendant also cites <u>Lanigan</u> v. <u>Maloney</u>, 853 F.2d 40 (1st Cir.1988), to argue that the trial judge lowered the burden of proof on the Commonwealth when he instructed the jury, "That's the job of the jury – to honestly seek the truth." In <u>Lanigan</u>, the criticized instruction, in the context of a jury charge containing multiple serious errors, "suggest[ed] that the jury's task is to figure out which side is 'right' rather than to determine whether the government proved guilt beyond a reasonable doubt." <u>Id</u>. at 48. The charge in the instant case did not create such an inappropriate dichotomy.

362, 365-366 (1981). That this instruction was incorrect was clear prior to the defendant's second motion for a new trial filed in 1992. See Commonwealth v. Spann, supra; In re Winship, 397 U.S. 358, 364 (1970) (defendant cannot be convicted except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged). Because this issue could have been raised earlier by the defendant, it is not new, see Commonwealth v. Ambers, supra at 707, and accordingly, with respect to the defendant's third issue, the defendant's application is denied.

I have further determined that the issue of the burden of proof, even if one aspect of the charge were new, is not substantial. "In considering whether a charge lowers the criminal standard of proof, we consider the charge, taken as a whole, and assess the possible impact of the alleged error on the deliberations of a reasonable juror, i.e., whether a reasonable juror could have used the instruction incorrectly." Commonwealth v. Rosa, 422 Mass. 18, 27 (1996). See also Commonwealth v. Pinckney, 419 Mass. 341, 342 (1994), quoting Victor v. Nebraska, 511 U.S. 1, 5 (1994). The trial judge correctly instructed the jury that the Commonwealth had to prove its case beyond a reasonable doubt, and that if such a doubt existed in the minds of the jury, the defendant was entitled to an acquittal. ℣

---

℣ The trial judge instructed the jury as follows:

4

Reviewing the charge on reasonable doubt heard by the jury as a
whole, I am satisfied that a reasonable juror could not have used
the entire instruction, despite the misstatement, to convict the

---

"It is the obligation of the Commonwealth in a criminal
case to establish the guilt of a defendant beyond a
reasonable doubt.  You've heard that phrase used several
times during the course of the arguments which have been
made here.

"Proof beyond a reasonable doubt does not mean proof
beyond all doubt.  It does not mean proof beyond the
possibility of innocence.  If a reasonable doubt or a mere
possibility of innocence were sufficient to prevent a
conviction, few if any defendants could ever be found guilty
of any crime.

"A foolish doubt, a whimsical doubt, a fanciful doubt
is not a reasonable doubt.  A reasonable doubt does not mean
such doubt as may exist in the mind of a juror who is simply
seeking an excuse to give a defendant a break.  A reasonable
doubt is one which remains in the mind of a reasonable juror
who is earnestly seeking the truth.  That's the job of the
jury - to earnestly seek the truth.

"A reasonable doubt is one which prevents the jury from
reaching that degree of certainty which satisfies the
judgment and consciences of the jurors as reasonable men and
women.  A reasonable doubt is one which prevents jurors, as
reasonable men and women, from reaching a clear and settled
conviction of guilt.  If that doubt exists as to the guilt
of these defendants or either one of them, they are entitled
to that doubt, and they are entitled to be acquitted.

"On the other hand, that does not mean in any sense of
the word that it is the obligation of the Commonwealth to
prove the guilt of these defendants to a mathematical
certainty, to an absolute certainty, to the extent that two
and two make four.  That's not the burden of the
Commonwealth.

"Guilt is established when the evidence is such that it
reaches the degree of certainty which satisfies your
judgment and your conscience as reasonable men and women."

5

defendant on a standard of proof lower than beyond a reasonable
doubt.    The issue is not substantial.

Margaret H. Marshall
Associate Justice

Entered:    July 6, 1999

6



The Commonwealth of Massachusetts
### SUPREME JUDICIAL COURT
#### FOR SUFFOLK COUNTY
1404 COURTHOUSE
BOSTON, MASSACHUSETTS 02108
July 7, 1999

MAURA S DOYLE
CLERK
(617) 557-1050/557-1100
FAX (617) 523-1540

ASSISTANT CLERKS
LILLIAN C. ANDRUSZKIEWICZ   (617) 557-1164
GEORGE E. SLYVA   (617) 557-1185
FRANCIS V KENNEALLY   (617) 557-1196

Jerry Funderberg
MCI-Shirley Medium Complex
P.O. Box 1218
Shirley, MA 01464

RE:   No. SJ-1997-0564

         JERRY FUNDERBERG
                v.
         COMMONWEALTH

### NOTICE OF DOCKET ENTRY

You are hereby notified that on July 7, 1999, the following was entered on the docket of the above referenced case:

Memorandum and Order, as on file. (Marshall, J.)

Maura S. Doyle, Clerk

To:   Jerry Funderberg
         Mark D. Zanini, Assistant District Attorney

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPREME JUDICIAL COURT
                                               FOR SUFFOLK COUNTY
                                               No. SJ-1997-0564


### COMMONWEALTH

### v.

### JERRY FUNDERBERG


### ORDER DENYING LEAVE TO APPEAL

This matter came before the Court, Marshall, J., presiding, and in accordance with the Memorandum of this date:

It is ORDERED and ADJUDGED that the defendant's application pursuant to G. L. c. 278, s. 33E, for leave to appeal from the denial of defendant's motion for new trial, is denied.

                              By the Court, (Marshall, J.)

                              Assistant Clerk

Entered:  July 6, 1999

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JERRY FUNDERBERG,<br><br>Petitioner<br><br>v.<br><br>PAUL M. VERDINI,<br>Respondent. | )<br>)<br>)<br>) CIVIL ACTION NO.<br>)  00-10256-EFH<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

May 30, 2000

HARRINGTON, D.J.

This matter is before the Court on the Respondent's Motion to Dismiss the Petition for Writ of *Habeas Corpus* filed by the Petitioner Jerry Funderberg on February 11, 2000. The Respondent Paul M. Verdini is the Warden of MCI-Shirley, the state correctional facility in which the petitioner is serving life sentences for his state court convictions in 1976 for the armed robbery and first degree murder of Peter Sulfaro.[1] Petitioner seeks the issuance of writ of *habeas corpus* under 28 U.S.C. § 2254 based on the claims of ineffective assistance of counsel, the withholding of exculpatory evidence by the prosecution, and erroneous jury instructions. Respondent contends, without arguing the merits of the petition, that the petition is time-barred under 28 U.S.C. § 2244(d)(1). Based on the reasons stated below, the Respondent's Motion to Dismiss is granted.

---

[1] Petitioner was also convicted of unlawful possession of a handgun stemming from the same incident.

The Petition for Writ of *Habeas Corpus* is dismissed as untimely because the petitioner failed to file this petition by April 24, 1997 -- as required by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. Law No. 104-132, 110 Stat. 1214 ("AEDPA"). Under AEDPA, a person held in custody pursuant to a state court judgment must file a petition for writ of *habeas corpus* within a year from the date on which the judgment became final by the conclusion of direct review. See 28 U.S.C. § 2244(d)(1)(A). For convictions that became final before the effective date of AEDPA, April 24, 1996, there is a one-year grace period which began running on April 25, 1996, the day after AEDPA's enactment. See Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir.1999). Since petitioner's conviction became final on March 6, 1978 when the Massachusetts Supreme Judicial Court upheld his convictions, see Commonwealth of Massachusetts v. Funderberg, 373 N.E.2d 963 (1978), the petitioner had until April 24, 1997 (one year from the date of AEDPA's enactment) in which to file his *habeas* petition. While ordinarily a motion for a new trial would toll the limitations period under 28 U.S.C. §2244(d)(2), see Gaskins, 183 F.3d at 9, petitioner's filing of a motion for a new trial on May 30, 1997 did not toll the limitations period because the limitations period had already expired a month earlier.[2] Since the tolling provisions of Section 2244(d)(2) have not been triggered and petitioner has failed to file this petition within the applicable limitations period, *i.e.*, by April 24, 1997, the Petition for

---

[2] Petitioner has made three unsuccessful motions for a new trial -- in 1977, 1990, and again on May 30, 1997.

-2-

Writ of *Habeas Corpus* is dismissed.

Respondent's Motion to Dismiss is granted.

SO ORDERED.

EDWARD F. HARRINGTON
United States District Judge

Exhibit "C"

No. 90 769

**Commonwealth vs.** Jerry Funderberg, alias
Jerry Funderburg

Offense

Murder - first degree

Attorney
Louis Maples - L.C.
6 Beacon St.
6/5/75    S.C. by Ct.

| Paper No. | Date of Filing | |
|---|---|---|
| | | (90766-71;91203,04) |
| 1 | May 16, 1975 | Indictment returned. |
| | May 19, 1975 | Copy of indictment and notice of the finding of indictment sent to the Chi[ef] Justice and Attorney General. |
| | | Copy of indictment with notice of finding of indictment and that it would entered forthwith on docket of this Court sent by Clerk to Sheriff for ser[vice] on defendant in Common Jail. |
| | | Order of notice without return of service on defendant received from Sher[iff] |
| 2 | June 5, 1975 | Brought into Court - Order of notice with return of service on defendant endorsed thereon by Sheriff, filed. |
| | | Petition for appointment of counsel, filed and allowed. |
| | | Affidavit, filed. |
| 3 | | Defendant's Motion to incur expenses, filed. |
| 4 | | Indictment read - pleads not guilty. |
| | | Defendant committed to Common Jail on mittimus without bail. Mittimus iss[ued] |
| 5 | | Court allows 20 days for filing special pleadings, all motions and grants |

| Paper No. | Date of Filing | |
|---|---|---|
| | June 5, 1975 | leave to be heard thereon. |
| | | Court orders defendant examined by Court Clinic Psychiatrist. |
| | | Pre-trial conference ordered for June 25, 1975, for hearing re: report. |
| | | Tamburello, J. - J. Mulligan, A.D.A. - E. Goldberg, Court reporter - |
| | | L. Maples, attorney for defendant. |
| | June 25, 1975 | Brought into Court. Continued to July 10, 1975 for a hearing re: psychiatric report by agreement. |
| | | Tamburello, J. - J. Mahoney, ADA - E. Golberg, Court Reporter - L. Maples, Attorney for defendant |
| | July 10, 1975 | Psychiatric report received from the Court Clinic Psychiatrist filed. |
| | July 11, 1975 | Defendant brought into Court. Hearing on psychiatrist report after hearing, Court finds the defendant competent to stand trial. |
| | | Continued to November 17, 1975 for trial by agreement. |
| | | Dwyer, J. - J. Mulligan, ADA - J. Brown, Court Reporter - L. Naples, Attorney for defendant |
| | July 22, 1975 | Defendant files: |
| 7. | | Motion for Bill of particulars; |
| 8. | | Motion for statements made by the defendant; |
| 9. | | Motion for copy of autopsy report; |
| 10 | | Motion of the defendant to be furnished with exculpatory evidence; |
| 11 | | Motion for copy of Grand Jury minutes; |

-7-

| Paper No. | Date of Filing | |
|---|---|---|
| 12 | July 22, 1975 | Motion to be furnished with criminal records and probation records; |
| 13 | | Motion for list of physical evidence; |
| 14 | | Motion to incur expenses; |
| 15 | | Motion to be furnished with copies of ballistic reports; |
| 16 | | Motion for names of witnesses; |
| 17 | | Motion to be furnished with statements of promises, rewards or inducements; |
| 18 | | Motion for the production of police department records and reports; |
| 19 | July 30, 1975 | Motion to be furnished with names and addresses of Commonwealth witnesses. |
| | | Defendant not in Court - continued to August 6, 1975 for a hearing re: motions by order of Court.    Dwyer, J. - S. Needle, ADA - C. Lynch, Court Reporter. |
| | Aug. 6, 1975 | Defendant not in Court - continued to September 3, 1975 by agreement. Sullivan, J. - J. Mahoney, ADA - F. McAuliffe, Court Reporter. |
| 20 | Oct. 10, 1975 | Defendant's Motion for a speedy trial filed. |
| 21 | June 9, 1976 | Brought into Court - Court files certificate of protracted trial ordering that a jury of not exceeding 16 members be impanelled.   Selection of jury proceeds before Roy, J.   All these proceedings are subject to General Laws, Chapter 278, Sections 33A - 33H inclusive, as amended. |
| cd | June 10, 1976 | Brought into Court - selection of jury proceeds before Roy, J.   Upon completion of selection of jury, trial proceeds before Roy J, and (OVER) |

| Paper No. | Date of Filing | |
|---|---|---|
| | June 10, 1976 | jury of 16 members. |
| | June 11, 1976 | Brought into Court – trial proceeds before Roy, J. and jury of 16 members. |
| | June 14, 1976 | Brought into Court – trial continues. |
| | June 15, 1976 | Brought into Court – at the close of the Commonwealth's case, defendant's oral motion for a directed verdict of not guilty of murder in the first degree, and defendant's oral motion for a directed verdict of not guilty of murder in the second degree, both made and after hearing, both motions are denied.    Trial continues.    Roy, J. – D. Anderson, Court Reporter. |
| | June 18, 1976 | Brought into Court – trial continues. Defendant's oral motion for a mistrial made and denied. Trial continues. |
| | June 18, 1976 | Defendant's written motion for directed verdict received and filed. Brought into Court – at the time of final submission of the case to the jury, there remaining 16 jurors, by direction of the Court, the names of all the jurors excepting the foreman, were placed in the barrel and the names of 4 jurors were withdrawn and designated by the Court as alternate jurors to be kept apart until the jury had agreed on verdict or been otherwise discharged. Defendant's Request for instructions to the jury, ordered filed and made part of the record by the Court, Roy, J.<br><br>Verdict guilty of Murder in the First Degree – verdict affirmed.<br><br>Court, Roy, J., continues disposition of this matter to June 21, 1976.(CONTINUED) |

- 3 -

No. 90-769

| Paper No. | Date of Filing | |
|---|---|---|
| | June 18, 1976 | J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, Attorney for defendant. |
| | June 21, 1976 | Brought into Court. Commonwealth moves for disposition. M.C.I. Walpole - for and during the term of his natural life. Deemed to have served 401 days of this sentence. Mittimus issued. Roy, J. - J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, Attorney for defendant. |
| 24 | June 28, 1976 | Defendant files:  Motion for appointment of Counsel -<br>motion for copy of transcript -<br>claim of appeal -<br>motion for new trial. |
| 25 | | |
| 26 | | |
| 27 | | |
| | | (Roy, J. notified as to Paper Nos. 24,25,27 and J. Mulligan, notified as to Paper No. 26). |
| | July 16, 1976 | Letter sent to Roy, J. re: Court's order for preparation of transcripts. |
| | Sept. 15, 1976 | Court, Roy, J., orders 5 copies of the transcript of evidence be prepared: 2 copies for the S.J.C., 1 copy for the District Attorney and 1 copy for each defendant at the expense of the Commonwealth. Order filed.  (Paper #31 in #91203). |
| | Sept. 20, 1976 | Request for designation of pleadings sent to Attorney of record and ADA. Letter sent to Court Reporters, Goldberg, Brown and Anderson, re: |

over

| Paper No. | Date of Filing | |
|---|---|---|
| 28 | Sept. 20, 1976 | Court's order for preparation of transcripts. |
| 29 | Oct. 1, 1976 | Two copies of the transcript of the evidence delivered to Clerk by D. Anderson. Court Reporter. |
| 30 | Oct. 12, 1976 | Court Reporter's certificate filed. |
| | | Two copies of the transcript of the evidence delivered to Clerk by E. Goldberg. Court Reporter |
| | | Two copies of the transcript of the evidence delivered to Clerk by J. Brown, Court Reporter. |
| | | Court Reporter's certificate filed. |
| 31 | Oct. 18, 1976 | Written notice of the completition of the summary of record sent to attorney of record. |
| 32 | Nov. 18, 1976 | Clerk's certificate filed. |
| | | Defendant not in Court - defendant's motion to extend time for filing assignment of error to and including December 18, 1976 filed and after hearing allowed. |
| | | Roy, J. - J. Mulligan, A.D.A. - L. Maples, attorney for defendant. |
| 33 | Dec. 17, 1976 | Defendant's Motion to Extend the Time for Filing Assignment of Errors filed and allowed as amended. Mason, J. - E. Goldberg, Court Reporter. |
| | Jan. 4, 1977 | Defendant's motion to extend filing of assignment of errors, filed and allowed for one day only. Mason, J. |

(CONTINUED)

-4-

No. 90 769

| Paper No. | Date of Filing | |
|---|---|---|
| 34 | Jan. 5, 1977 | Defendant's motion to extend the time for filing assignment of errors to and including January 31, 1977, filed and allowed.   Roy, J. |
| 35 | Jan. 31, 1977 | Defendant's Assignment of Errors, filed. |
| | March 4, 1977 | Court, Roy, J. orders record on appeal held pending hearing on motion for new trial. |
| | March 10, 1977 | Hearing before Roy, J. on defendant's motion for new trial. Roy, J. - |
| | Apr. 4, 1977 | Brought into Court - after hearing motion #27 denied. J. C. Roy, J. - J. Milligan, ADA - D. Anderson, Court Reporter - L. Maples, attorney for defendant. |
| | July 29, 1977 | Record on appeal entered in the Supreme Judicial Court. Attorney of record and ADA notified. |
| 36 | March 7, 1978 | Rescript from Supreme Judicial Court, Braucher, J. "Judgement Affirmed" filed.   (Attorney Maples and District Attorney each notified). |
| 37 | Dec.21,1990 | Defendant files; Motion for New trial. Motion for Leave to take disposition. |
| 38 | | Court takes no action, allows counsel to January 4,1991 to file affidavit. Irwin,J. - J. Donahue, ADA - N. King,Court Reporter - G.Hines, attorney for defendant. |

(OVER)

Paper No.

39

Date of Filing

| Jan. 4, 1991 | Affidavit of Margaret A. Burnham, Esquire, filed. (Irwin, J. notified with copy) (Roy, J. original Judge) |
| --- | --- |
| Sept. 25, 1991 | Lobby conference re: Status of Motion for New Trial scheduling. ADA to furnish transcripts to Court. Tuttle, J. - J. Sullivan, ADA - M. Burnham, attorney for defendant. (gs) |
| Oct. 2, 1991 | Lobby conference re: status of Motion for New trial. ADA Sullivan to furnish remaining transcripts and Attorney Burnham to furnish any additional Affidavits on or before October 23, 1991- by mailing to Court St. Worcester Superior Court. Tuttle, J. - Jane Sullivan, ADA - M. Burnham, attorney for defendant. (gs) |
| July 29, 1992 | Conference held in Judges Lobby. Court orders case set down for September 14, 1992 for a Motion for a New Trial. Court appoints OPC for Witness David Bass for hearing on Motion for a New Trial before Tuttle, J. Tuttle, J. - J. Sullivan, ADA - M. Burnham, attorney for defendant. (gs) |
| Sept. 18, 1992 | Defendant not in Court.  Lobby conference. Continued to September 28, 1992 at request of defendant. Court appoints Attorney Scott Curtis to represent Witness, David Bass pursuant to Rule 53. Tuttle, J. - M. Ames, ADA - M. Burnham, attorney for defendant. (gs) |

-5-

No. 90769

| Paper No. | Date of Filing | |
|---|---|---|
| 40 | Oct. 2, 1992 | Brought into Court - Continued to October 27, 1992 for further hearing Re: Motion for New Trial. Tuttle, J. - M. Ames, ADA - M. Wrighton, Court Reporter - M. Burnham, attorney for defendant. |
| 41 | Oct. 27, 1992 | Brought into Court - Defendant - Defendant's Motion for New Trial, after hearing, taken under advisement. Commonwealth's: Memorandum of Law in Opposition to Defendant's Motion for New Trial, filed. Defendant's Memorandum of Law in Support of Motion for New Trial, filed. Tuttle, J. - M. Zannine, ADA - M. Horrigan, Court Reporter - M. Burnham, attorney for defendant; |
| 42 | Nov. 25, 1992 | Memorandum of Decision denying defendant's Motion for new trial filed by Tuttle, J. Attorney M. Burnham and A.D.A. each notified. |
| 43 | May 30, 1997 | Defendant files: Motion for release from unlawful restraint or for a new trial; Affidavit in support thereof; Memorandum of Law in support thereof. (Volterra, R.A.J. notified with copies) |
| 44 | July 15, 1997 | Defendant's motion for release from unlawful restraint of for a new trial (paper #43 is denied as endorsed. Volterra, J. (deft notified) |
| 45 | | |

(OVER)

| Paper No. | Date of Filing | |
|---|---|---|
| 46. | Aug. 12, 1997 | Defendant's Notice of Appeal for denial of motion for release from unlawful restraint or for new trial, filed. (rp) |

# Commonwealth vs.

Jerry Funderberg, alias
Jerry Funderburg

NO. 90 770

Offense

Robbery - armed

Attorney) L. Maples - L.C.

6/5/75 S.C.

| Paper No. | Date of Filing | |
|---|---|---|
| 1 | May 16, 1975 | (90766-71,91203,04) |
| | | Indictment returned. |
| | June 5, 1975 | Brought into Court - waives reading of the indictment - pleads not guilty. Court allows 20 days for filing special pleadings, all motions and grants leave to be heard thereon. |
| | | Pre-trial conference ordered for June 25, 1975. |
| | June 9, 1976 | Brought into Court - Court files Certificate of Protracted trial ordering that a jury of not exceeding (16) members be impanelled. (Paper #21 in #90769) Selection of jury proceeds before Roy, J. All these proceedings are subject to General Laws, Chapter 278, Sections 33A-H, inclusive as amended. |
| | | L. Maples, attorney for defendant. |
| | | Tamburello, J. - J. Mulligan, A.D.A. - E. Goldberg, Court reporter - |
| | June 10, 1976 | Brought into Court - selection of jury proceeds before Roy, J.. Upon completion of selection of jury, trial proceeds before Roy, J. and jury |

(OVER)

| Paper No. | Date of Filing | |
|---|---|---|
| | June 10, 1976 | of (16). |
| | June 11, 1976 | Brought into court - Trial proceeds before Roy, J. and jury of (16) |
| | June 14, 1976 | Brought into Court - trial continues. |
| | June 15, 1976 | Brought into Court - at the close of the Commonwealth's case, defendant's oral motion for a directed verdict of not guilty on the charge of robbery, armed made and after clearing, denied. |
| | June 16, 1976 | Trial continues. Roy, J. - D. Anderson, Court Reporter. |
| | | Brought into Court - trial continues. |
| | | Trial continues. |
| | | Defendant's oral motion for a mistrial made and denied. |
| | | Defendant's written motion re: motion for directed verdict received and filed. (Paper No. 22 in #90769) |
| | June 18, 1976 | Brought into Court - at the time of final submission of the case to the jury there remaining (16) jurors, by direction of the Court, the names of all the jurors excepting the foreman, were placed in the barrel and the names of four jurors were withdrawn and designated by the Court as alternated jurors to be kept apart until the jury had agreed on their verdict or been otherwise discharged. |
| | | Verdict Guilty - Verdict Affirmed. |
| | | Court continues disposition of this matter to June 21, 1976. Roy, J. |

(CONTINUED)

- 2 -

No. 90-770

| Paper No. | Date of Filing | |
|---|---|---|
| | June 18, 1976 | J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, attorney for the defendant. |
| | June 21, 1976 | Brought into Court - Commonwealth moves for disposition. |
| | | MCI, Walpole for and during term of his natural life. |
| | | Concurrent with sentence imposed on indictment #90769. |
| | | Mittimus issued. |
| | June 28, 1976 | Defendant deemed to have served 401 days of said sentence. |
| | | Defendant notified of right to appeal to the Appellate Division. Roy, J. |
| | | J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, attorney for defendant. |
| | July 16, 1976 | Defendant files motion for appointment of counsel - motion for copy of transcript - claim of appeal - motion for new trial. |
| | | (Paper Nos. 24-27 in #90769) |
| | Sept. 15, 1976 | Letter sent to Roy, J. re: Court's order for preparation of transcripts. |
| | | Court, Roy, J., orders 5 copies of the transcript of evidence be prepared. 2 copies for the S.J.C., 1 copy for the District Attorney and 1 copy for each defendant at the expense of the Commonwealth. Order filed. (Paper No. 31 in No. 91-203). |
| | Sept. 20, 1976 | Request for designation of pleadings sent to Attorney of Record and A.D.A. |
| | | Letter sent to Court Reporters Goldberg, Brown and Anderson, re:  (OVER) |

(OVER)

| Paper No. | Date of Filing | |
|---|---|---|
| | Sept. 20, 1976 | Court's order for preparation of transcripts. |
| | Oct. 1, 1976 | Two copies of the transcript of the evidence delivered to Clerk by D. Anderson, Court Reporter. Court Reporter's Certificate filed. (Paper #28 in #90769). |
| | Oct. 12, 1976 | Two copies of the transcript of the evidence delivered to Clerk by E. Goldberg, Court Reporter |
| | Oct. 18, 1976 | Two copies of the transcript of the evidence delivered to Clerk by J. Brown, Court Reporter. Court Reporter's certificate filed. (Paper No. 29 in 90769) |
| | Nov. 18, 1976 | Written notice of the completion of the summary of record sent to attorney of record. Clerk's certificate filed. (Paper No. 30 in 90769) |
| | Dec. 17, 1976 | Defendant not in Court - defendant's motion to extend time for filing assign- ment of errors to and including December 18, 1976 filed and after hearing, allowed (Paper No. 31 in No.90769). |
| | Jan. 4,1977 | Roy, J. - J. Mulligan, A.D.A. - L. Maples, attorney for defendant. |
| | Jan. 5, 1977 | Defendant's Motion to Extend the Time for Filing Assignment of Errors filed and allowed as amended. (Paper #32 in #90769). Mason, J. - E. Goldberg, Court Reporter |
| | Jan. 31, 1977 | Defendant's motion to extend the time for filing of assignment of errors filed and allowed for one day only. (Paper #33 in #90769). Mason, J. |
| | | Defendant's motion to extend the time for filing assignment of errors to and including January 31,1977 filed and allowed. (Paper #34 in #90769). Roy, J. |
| | | Defendant's Assignment of Errors filed. (Paper No. 35 in 90769). (CONTINUED) |

- 3 -                                                     No. 90-770

| Paper No. | Date of Filing | |
|---|---|---|
| | March 4, 1977 | Court, Roy, J., orders record on appeal held pending hearing on motion for new trial. |
| | Apr. 4, 1977 | Brought into Court - after hearing, Motion No. 27 denied. |
| | July 29, 1977 | J. C. Roy, J. - J. Milligan, ADA - D. O. Anderson, Court Reporter - L. Maples, attorney for defendant. |
| | March 7, 1978 | Record on Appeal entered in the Supreme Judicial Court. |
| | | Attorney of record and ADA notified. |
| | | Rescript from Supreme Judicial Court, Braucher, J., "Judgement Affirmed," filed.  (Paper #36 in 90769). |
| | Dec. 21, 1990 | Defendant files Motion for new trial; Motion for leave to take Deposition. (Papers Nos. 37 and 38 in # 90769). |
| | Dec. 28, 1990 | Defendant not in Court - hearing re: Motion for leave to take Deposition. Court takes no action; allows counsel to file Affidavit by January 4, 1991. |
| | Jan. 4, 1991 | Irwin, J. - J. Donahue, A.D.A.     G.Hines, attorney. N.King,court reporter. Affidavit of Margaret A. Burnham. Esquire, filed.(Paper #39 in #90769). |
| | July 29, 1992 | Conference held in Judges Lobby. |
| | Sept. 18, 1992 | Court. Orders case set down for September 14, 1992, for a Motion for new tri[al] Court Appoints Office of Public Counsel to represent witness David Bass for Hearing on Motion for new trial before Tuttle, J., on September 14, 1992. Tuttle, J. - J. Sullivan, A.D.A.    M. Burnham, attorney. Defendant not in Court - Lobby conference. Continued to September 28, 1992 |

| Paper No. | Date of Filing | |
|---|---|---|
| | Sept. 18, 1992 | Court appoints Attorney Scott Curtis to represent witness David Bass pursuant to Rule 53. Tuttle, J. - M. Ames, A.D.A. M. Burnham, attorney. |
| | Oct. 2, 1992 | Brought into Court - continued to October 27, 1992, for further hearing re: Motion for new trial. Tuttle, J. - M. Ames,A.D.A. M. Burnham, attorney. M. Wrighton, court reporter. |
| | Oct. 27, 1992 | Brought into Court - defendant's Motion for new trial, after hearing, taken under advisement. |
| | | Commonwealth's Memorandum of Law in opposition to defendant's Motion for new trial, filed. (Paper # 40 in #90769) |
| | | Defendant's Memorandum of Law in support of Motion for new trial filed. (Paper #41 in # 90769). Turrle, J. - M. Zannini,A.D.A. M. Burnham, attorney. M. Horrigan, court reporter. |
| | Nov. 27, 1992 | Memorandum of Decision denying defendant's Motion for new trial filed by Tuttle, J. (Paper # 42 in #90769). |
| | May 30, 1997 | Defendant files: Motion for release from unlawful restraint or for a new trial; Affidavit in support thereof; Memorandum of Law in support thereof.(Paper No. 43-44 in 90769) (rp) |
| | July 15, 1997 | Paper #43 of 90769 is denied as endorsed. Volterra, J. (rp) |

NO. 90 771 C

**Commonwealth vs.** Jerry Funderberg, alias
Jerry Funderburg

Attorney  L. Maples - L.C.

| Paper No. | Date of Filing | |
|---|---|---|
| 1 | May 16, 1975 | Indictment returned. |
| | June 5, 1975 | Brought into Court - waives reading of the indictment - pleads not guilty |

Offense

Unlawfully carrying a revolver    6/5/75  S.C.
on his person

(90766-71-91203,04)

Brought into Court - waives reading of the indictment - pleads not guilty

Court allows 20 days for filing special pleadings, all motion and grants

leave to be heard thereon.

Pre-trial conference ordered for June 25, 1975. Tamburello, J. -

J. Mulligan, A.D.A. - E. Goldberg, Court reporter - L. Maples, attorney

for defendant.

June 9, 1976   Defendant brought into Court. Court files Certificate of protracted tria

ordering that a jury of not exceeding sixteen members be impanelled. (Pa

No. 21 in 90769) Selection of jury proceeds before Roy, J. All of these

proceedings are subject to General Laws Chapter 278, Sections 33A-33H inc

as amended.

June 10, 1976   Defendant brought into Court. Selection of jury proceeds before Roy, J.

Upon completion of selection of jury, trial proceeds before Roy, J. and

ov

| Paper No. | Date of Filing | |
|---|---|---|
| | June 10, 1976 | and jury of sixteen. |
| | June 11, 1976 | Defendant brought into Court. Trial proceeds before Roy, J. and jury of sixteen. |
| | June 14, 1976 | Brought into Court. Trial continues. |
| | June 15, 1976 | Brought into Court. At the close of the Commonwealth's case, defendant's oral motion for a directed verdict of not guilty made and denied. |
| | June 16, 1976 | Trial continues. Roy, J. - D. Anderson, Court Reporter |
| | | Brought into Court. Trial continues. Defendant's oral motion for a mistrial made and denied. - Trial continues. Defendant's written motion re: motion for directed verdict received and filed. (Paper No. 22 in 90769) |
| | June 18, 1976 | Brought into Court. At the time of final submission of the case to the jury, there remaining sixteen jurors, by direction of the Court, the names of all the jurors, excepting the foreman, were placed in the barrel and the names of four jurors were withdrawn and designated by the Court as alternate jurors to be kept apart until the jury had agreed on their verdict or been otherwise discharged. |
| | | Verdict Guilty. Verdict Affirmed. Court, Roy, J. continues disposition of this matter to June 21, 1976. |
| | | Roy, J. - J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, Attorney for defendant |

CONTINUED

-2-

No. 90-771

| Paper No. | Date of Filing | |
|---|---|---|
| pf | June 21, 1976 | Brought into Court. Commonwealth moves for dispostion. M.C.I. Walpole max. five years, min. two and one-half years. Mittimus issued No. 90769. This sentence to be served concurrent with the sentence imposed on Indictmen Defendant deemed to have served 401 days of said sentence. Defendant notified of his right to appeal to the Appellate Division. |
| | June 28, 1976 | Roy, J. - J. Mulligan, ADA - D. Anderson, Court Reporter - L. Maples, Attorney for defendant Defendant files: Motion for appointment of counsel, motion for copy of transcript, claim of appeal, motion for new trial. (Paper No. 24-27 in 90769) |
| | July 16, 1976 | Letter sent to Roy, J. re: Court's order for preparation of transcripts. |
| | Sept. 15, 1976 | Court, Roy, J., orders 5 copies of the transcript of evidence be prepared: 2 copies for the S.J.C., 1 copy for the District Attorney and 1 copy for each defendant at the expense of the Commonwealth. Order filed. (Paper #31 in #91203). |
| cd | Sept. 20, 1976 | Request for designation of pleadings sent to Attorney of record and A.D.A. Letter sent to Court Reporters Goldberg, Brown and Anderson, re: Court's order for preparation of transcripts. |
| | Oct. 1, 1976 | Two copies of the transcript of the evidence delivered to Clerk (OVER) |

| Paper No. | Date of Filing | |
|---|---|---|
| | Oct. 1, 1976 | by D. Anderson, Court Reporter. Court Reporter's certificate filed. (Paper #28 in #90969). |
| | Oct. 12, 1976 | Two copies of the transcript of the evidence delivered to Clerk by E. Goldberg, Court Reporter. |
| | Oct. 18, 1976 | Two copies of the transcript of the evidence delivered to Clerk by J. Brown, Court Reporter. Court Reporter's certificate filed. (Paper No. 29 in 90769) |
| | Oct. 18, 1976 | Written notice of the completion of the summary of record sent to Attorney of record. Clerk's certificate filed. (Paper No. 30 in 90769) |
| | Nov. 18, 1976 | Defendant not in Court - defendant's motion to extend time for filing assignment of errors to and including December 18, 1976 filed and after hearing, allowed.      (Paper No. 31 in No.90769). |
| | Dec. 17, 1976 | Roy, J. - J. Mulligan, A.D.A. - L. Maples, attorney for defendant. Defendant's Motion to Extend the Time for Filing Assignment of Errors filed and allowed as amended. (Paper #32 in #90769) Mason, J. - E. Goldberg, Court Reporter |
| | Jan. 4, 1977 | Defendant's motion to extend the time for filing of assignment of errors filed and allowed for one day only. (Paper #33 in #90769). Mason, J. |
| | Jan. 5, 1977 | Defendant's motion to extend the time for filing assignment of errors to and including January 31, 1977 filed and allowed. (Paper #33 in No. 90769). Roy, J. |
| | Jan. 31, 1977 | Defendant's Assignment of Errors, filed. (Paper No. 35 in No. 90769). (CONTINUED) |

-3-                                                     No. 90.771

| Paper No. | Date of Filing | |
|---|---|---|
| | March 4, 1977 | Court, Roy, J., orders record on appeal held pending hearing on motion for new trial. |
| | April 4, 1977 | Brought into Court - after hearing, motion #27 denied. Roy, J. - J. Mulligan, A.D.A. - D. Anderson, Court Reporter L. Maples, attorney for defendant. |
| | July 29, 1977 | Record on Appeal entered in the Supreme Judicial Court. Attorney of record and ADA notified. |
| | March 7, 1978 | Rescript from Supreme Judicial Court, Braucher, J., "Judgement Affirmed," filed. (Paper #36 in 90769). |
| | Dec. 21, 1990 | Defendant files: Motion for leave to file Deposition |
| | Dec. 28, 1990 | Defendant not in Court - Hearing re: Motion for leave to take Deposition. |
| | Jan. 4, 1991 | Court takes no action; allows counsel to January 4, 1991, to file Affidavit. Irwin, J. - J. Donahue, A.D.A. G.Hines, attorney. N.King, court reporter |
| | July 29, 1992 | Affidavit of Margaret A. Burnham, Esquire, filed. |
| | | Conference held in Judges Lobby. |
| | | Court Orders case set down for September 14, 1992, for a Motion for new trial |
| | | Court appoints Office of Public Counsel to represent witness David Bass for Hearing on Motion for new trial before Tuttle, J., on September 14, 1992 Tuttle, J. - J. Sullivan, A.D.A. M. Burnham, attorney. |
| | Sept. 18, 1992 | Defendant not in Court - Lobby conference. Continued to September 28, 1992 for Hearing at request of defendant. |

(OVER)

| aper No. | Date of Filing | |
|---|---|---|
| | Sept. 18, 1992 | Court appoints Attorney Scott Curtis to represent witness David Bass pursuant to Rule 53. Tuttle, J. - M. Ames, A.D.A.  M. Burnham, attorney. |
| | Oct. 2, 1992 | Brought into Court - continued to October 27, 1992, for further hearing re: Motion for new trial. Tuttle, J. - M. Ames, A.D.A.  M. Burnham, attorney. M. Wrighton, court reporter. |
| | Oct. 27, 1992 | Brought into Court - Defendant's Motion for new trial, after hearing, taken under advisement. Commonwealth's Memorandum of Law in Opposition of defendant's Motion for new trial filed. (Paper # 40 in #90769). Defendant's Memorandum of Law in support of Motion for new trial filed. (Paper #41 in #90769). Tuttle, J. - M. Ames, A.D.A.  M. Zannini, A.D.A.  M.Burnham,attorney/ M. Horrigan, court reporter. |
| | Nov. 27, 1992 | Memorandum of Decision denying defendant's Motion for new trial filed by Tuttle, J.   (Paper #42 in # 90769). |
| | May 30, 1997 | Defendant files: Motion for release from unlawful restraint or for a new trial; Affidavit in support thereof; Memorandum of Law in support thereof. (Paper No. 43-44 in 90769)   (rp) |
| | July 15, 1997 | Paper #43 of 90769 is denied as endorsed. Volterra, .   (rp) |

**\*963**  373 N.E.2d 963

374 Mass. 577

## COMMONWEALTH
v.
**Jerry FUNDERBERG (and four companion cases (FN1)).**

Supreme Judicial Court of Massachusetts, Suffolk.
Argued Jan. 4, 1978.
Decided March 6, 1978.

Defendants were convicted in Superior Court, Suffolk County, Roy, J., of murder in the first degree and armed robbery, and one of them was convicted of unlawful possession of a handgun, and they appealed.    The Supreme Judicial Court, Braucher, J., held that: (1) there had been no abuse of discretion in denial of motions for continuance, and (2) identification procedure whereby, two months after witness had selected two incorrect photographs from group of 61 photographs, he was shown the same photographs plus four additional photographs which included defendants and a companion of defendants, with no intervening communication between the witness and the police, and with no dramatic focus on the four added photographs, was not impermissibly suggestive.

Affirmed.

1. CRIMINAL LAW ☞590(1)
    110   ----
    110XIX   Continuance
    110k588   Grounds for Continuance
    110k590   Want of Preparation
    110k590(1)   In general.
Mass. 1978.

There was no abuse of discretion in denial of pretrial motion for continuance which stated that time was needed to investigate alibi defense, interview witnesses, and obtain and review certain records, where defendant had known of his coming trial for more than a year, during most of which time he was represented by counsel of his choice, and 24 days elapsed from time new counsel was appointed until he began to present the defense.

2. CRIMINAL LAW ☞596(2)
    110   ----
    110XIX   Continuance
    110k588   Grounds for Continuance
    110k596   Cumulative or Impeaching Evidence

110k596(2)    Corroborating testimony.
Mass. 1978.

There was no abuse of discretion in denying continuance when, on fifth day of trial, witness refused to come from out-of-state, where it appeared that her testimony would be merely corroborative and there was no showing that she could have presented convincing corroboration on critical matter.

3. CRIMINAL LAW ☞339.7(3)
    110   ----
    110XVII   Evidence
    110XVII(D)   Facts in Issue and Relevance
    110k339.5   Identity of Accused
    110k339.7   Photographs and Drawings
    110k339.7(3)         Manner of exhibition; suggestiveness.
Mass. 1978.

Identification procedure whereby, two months after witness had selected two incorrect photographs from group of 61 photographs, he was shown the same photographs plus four additional photographs which included defendants and a companion of defendants, with no intervening communication between the witness and the police, and with no dramatic focus on the four added photographs, was not impermissibly suggestive.

**\*964** [374 Mass. 578] Martin K. Leppo, Boston, for Raymond Gaines.

Michael R. Pizziferri, Boston (Joseph A. Todisco, Natick, with him), for Jerry Funderberg.

Robert J. McKenna, Jr., Asst. Dist. Atty. (Michael J. Traft, Special Asst. Dist. Atty., with him), for the Commonwealth.

Before [374 Mass. 577] HENNESSEY, C. J., and QUIRICO, BRAUCHER, KAPLAN and ABRAMS, JJ.

[374 Mass. 578] BRAUCHER, Justice.

The two defendants were convicted of murder in the first degree and armed robbery, and the defendant Funderberg was convicted of unlawful possession of a handgun.    They appeal.    The defendant Gaines assigns error in the denial of his repeated requests for a continuance, both defendants assign error with respect to photographic identifications, and the defendant Funderberg assigns

Copyright (c) West Group 2000 No claim to original U.S. Govt. works

additional errors with respect to the exclusion of evidence and instructions to the jury. We affirm the convictions.

The Commonwealth introduced evidence tending to prove the following facts. About 4 P.M. on Tuesday, December 10, 1974, the victim's fifteen-year old son was tending the cash register in his father's shoe repair shop in Roxbury. Three men entered the shop, Gaines, Funderberg, and a third man, Anderson. Gaines took money from the cash register; Funderberg and Anderson had guns, and one of them shot and fatally wounded the victim. The three men then backed out of the store and ran toward a nearby housing project.

An apartment in the housing project was used as a "shooting gallery," where customers could use heroin. The three men arrived there, out of breath, some time after 4 P.M. that day. Funderberg had a gun in his belt. He said, "When we get ready to do something and you get in the line of fire, you get hurt, too." One of them said, "How much money [ 374 Mass. 579] did we get?" The answer was $120. One said, "Oh, let's go back in the back room to do what we intended to do." The three were in the back room when the police knocked on the door of the apartment and were admitted, but the police left when the proprietor of the "shooting gallery" asked them for a search warrant. Two or three days later, according to the proprietor's testimony, "Funderberg was telling Anderson he thought he'd hit him (the victim), you know, and Anderson said he don't think his shot hit him."

In May, 1975, Gaines was in jail in Des Moines, Iowa, and three police officers obtained arrest warrants and went to Iowa to bring him back to Boston. Miranda warnings were given to Gaines. The next day, on the return flight, Gaines told an officer-witness "that I didn't warn him of his rights so he could tell me the story. . . . He told me he was there when it happened, when it went down. He told me that the boy would never be able to recognize him because he pulled his hat down on his forehead and he took out his teeth."

The defendants attacked the identifications made by the victim's son, and sought to show bias in the testimony placing them in the "shooting gallery." Each of them also presented alibi testimony. Gaines and his aunt testified that he left Boston on a bus for Iowa on December 8, 1974, and that he telephoned

her on his arrival on December 10. Five witnesses testified that Funderberg was babysitting in his sister's apartment from about 3:30 to 5 P.M. on December 10.

1. Gaines's requests for continuance. Gaines was indicted in May, 1975; on July 1, 1975, a Superior Court judge appointed counsel requested by Gaines by name. After filing a number of pre-trial motions, counsel withdrew on May 21, 1976. New counsel was appointed the same day, and *965 trial was scheduled for June 9, 1976. Some time before then a written motion for continuance was filed by the new counsel and denied. At a pre-trial hearing on June 9, he complained that he was not entirely ready for trial. During a voir dire hearing on June 10 on photographic identifications [374 Mass. 580] he orally renewed his motion for a continuance, stating that he was not prepared and that he wanted to "check out the truth and veracity" of the testimony of the officer who assembled the photographs; the motion was denied. On Monday, June 14, counsel stated that he had not had time to obtain certified copies of the criminal records of Alfred Hamilton, a prosecution witness; he was given the opportunity to use the lunch break to obtain the records, but he did not produce them. On June 15, after the Commonwealth had completed its case in chief, he requested a mistrial or a continuance to obtain process to compel the attendance of Gaines's mother, an alibi witness in Iowa; the motion was denied.

Whether a motion for continuance should be granted lies within the sound discretion of the judge, whose action will not be disturbed unless there is a patent abuse of discretion. Commonwealth v. Cavanaugh, --- Mass. ---, --- (FNa), 353 N.E.2d 732 (1976). Commonwealth v. Gilchrest, 364 Mass. 272, 276, 303 N.E.2d 331 (1973). Commonwealth v. Bettencourt, 361 Mass. 515, 517-518, 281 N.E.2d 220 (1972). The reasons presented to the judge when the requests were denied were not such as to demonstrate that denial was an abuse of discretion, and a reading of the transcript fails to indicate that the quality of the defense was perceptibly impaired by the denials.

[1] [2] The written pre-trial motion stated only that time was needed "to investigate the alibi defense, interview witnesses, obtain and review hospital and other records." The defendant had known of his coming trial for more than a year, during most of

which he was represented by counsel of his choice. Twenty-four days elapsed from the time new counsel was appointed until he began to present the defense, and counsel obviously had time to interview witnesses and obtain records locally. The need to compel the attendance of an Iowa witness apparently arose on the fifth day of trial, when the witness refused to come. It appeared to the judge that her testimony "would just corroborate" other testimony; there was no showing that she could have presented convincing corroboration on the critical matter of the date the [374 Mass. 581] defendant went to Iowa. See Commonwealth v. Dirring, 354 Mass. 523, 529-530, 238 N.E.2d 508 (1968).

2. Photographic identifications. Before trial Gaines moved to suppress photographic identifications and resulting in-court identifications. After hearing, the judge found that a fair mixture of photographs was presented to the victim's son, that there was no suggestiveness in the manner of presentation, and that his identifications of the defendants were untainted. The judge said that the reliability and weight of any identification were for the jury, and denied the motion. He directed that the witness not be shown the photographs until he testified again, and arrangements were made for sanitized reproductions, eliminating police notations.

The victim's son was the first witness at trial; on direct examination he identified the defendants as two of the three robbers, but did not testify to prior photographic identifications. Cross-examination on behalf of Gaines revealed prior viewing of photographs, and, after a second voir dire hearing, evidence tending to show the following facts was produced before the jury by the victim's son and the police officers who had taken part.

[3] The victim's son was shown sixty-one photographs of black males on December 11, 1974. Photographs of the defendants were not included, and he identified two other individuals. One was the stepson of the proprietor of the "shooting gallery" apartment; the other, Hamilton, was married before the trial to the proprietor's sister. Both were present in that apartment  *966. at some time during the afternoon of the crime; both were arrested for the crime and later released.

The victim's son next spoke to the police on February 17, 1975, when he was shown an array of sixty-five photographs. These consisted of the same

sixty-one plus one of each of the defendants and two of Anderson. This time he picked out the two defendants. He testified that the police told him that he had identified the wrong persons the first time, but the police officers testified to the contrary, and [ 374 Mass. 582] before trial the judge had accepted their version of their procedure in preference to his version. The son did not know that identical photographs were shown both times.

Contrary to the defendants' arguments, we conclude that the evidence developed at trial confirmed the judge's pre-trial finding that the second showing was not impermissibly suggestive. After a lapse of two months, with no intervening communication between the identifying witness and the police, there was no dramatic focus on the four added photographs. Contrast Commonwealth v. Pettijohn, --- Mass. ---, --- - --- (FNb), 364 N.E.2d 1070 (1977). The weaknesses in the identifications were fully aired before the jury. Since the pre-trial identification procedures were not constitutionally defective, we need not consider whether the in-court identifications had an independent basis. Commonwealth v. Chase, --- Mass. ---, --- (FNc), 363 N.E.2d 1105 (1977), and cases cited.

3. Funderberg's other contentions. We refer briefly to Funderberg's other contentions, none of which has merit.

a. As to restriction of the recross-examination, see Commonwealth v. Hall, 369 Mass. ---, --- (FNd), 343 N.E.2d 388 (1976).

b. Funderberg's argument that a photograph was used improperly in cross-examination of a defense witness depends on facts not established in the record before us.

c. As to the sufficiency of cautionary instructions when a witness made an unresponsive answer, see Commonwealth v. Ferro, --- Mass. ---, --- (FNe), 361 N.E.2d 1234 (1977).

d. As to evidence offered after closing arguments, see Duchesneau v. Jaskoviak, 360 Mass. 730, 734, 277 N.E.2d 507 (1972); Commonwealth v. Williams, --- Mass.App. --- (FNf), 361 N.E.2d 946 (1977).

e. As to the judge's instruction with respect to the right to search a dwelling, see Selectmen of

Copyright (c) West Group 2000 No claim to original U.S. Govt. works

373 N.E.2d 963, 374 Mass. 577, Com. v. Funderberg, (Mass. 1978)    **Page 4**

Framingham v. Municipal Court of the City of Boston, --- Mass. ---, --- - --- (FNg), 369 N.E.2d 1145 (1977).

4. Section 33E.    After reviewing the law and the evidence, we have concluded that neither defendant is entitled to relief under G.L. c. 278, s 33E.

 Judgments affirmed.

FN1.  Two companion cases are against Jerry Funderberg and two are against Raymond Gaines.

FNa. Mass.Adv.Sh. (1976) 2216, 2223.

FNb. Mass.Adv.Sh. (1977) 1480, 1482-1483.

FNc. Mass.Adv.Sh. (1977) 1287, 1297.

FNd. Mass.Adv.Sh. (1976) 444, 467.

FNe. Mass.Adv.Sh. (1977) 761, 767.

FNf. Mass.App.Ct.Adv.Sh. (1977) 383.

FNg. Mass.Adv.Sh. (1977) 2541, 2543-2544.

Copyright (c) West Group 2000 No claim to original U.S. Govt. works